UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KYLE HARDISON,                                    :

                Petitioner,        :            06 Civ. 0322 (LTS) (AJP)

       -against-              :        **REPORT AND RECOMMENDATION**

DALE ARTUS, Superintendent of Clinton    :
Correctional Facility,
                        :

             Respondent.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Laura Taylor Swain, United States District Judge:**

           Pro se petitioner Kyle Hardison seeks a writ of habeas corpus from his March 12,

2002 conviction in Supreme Court, New York County, of first degree rape and first degree sodomy

and sentence of twelve and one half to 25 years on each count, to run consecutively.  (Dkt. No. 2:

Pet. ¶¶ 1-5.)

           Hardison's habeas petition raises three grounds:  (1) ineffective assistance of trial

counsel for failure to make a motion to dismiss on statute of limitations ground (Pet. ¶ 12(1) & Att.

at 1-4); (2) deprivation of a fair trial resulting from the prosecutor shifting the burden of proof

through summation comments (Pet. ¶ 12(2) & Att. at 5-10); and (3) "[i]llegal and unconstitutional

consecutive sentences" in violation of the Eighth and Fourteenth Amendments (Pet. ¶ 12(3) & Att. at 11-14).[1]

      For the reasons set forth below, Hardison's petition should be <u>DENIED</u>.

**<u>FACTS</u>**

**<u>Prosecution Case at Trial</u>**

      **<u>The Attack on CM</u>**[2]

      During the evening of November 21, 1995, CM was at her friend's apartment at 258 East 125th Street when someone, whose voice CM recognized, rang the intercom and told CM to come downstairs to see a customer. (Dkt No. 8: CM: Trial Transcript ["Tr."] 156.) At that time, CM was a crack cocaine dealer, and the "customer" was understood to be someone interested in buying drugs from her. (CM: Tr. 155-56.) On her way out of the building to meet the customer, CM saw Hardison in the lobby. (CM: Tr. 157-58.)[3] Although she did not know him by name, CM

---

[1] Hardison's petition raised a fourth claim alleging violation of his right to confrontation (Pet. ¶ 12(4)), which Hardison subsequently withdrew. (Dkt. No. 6: 2/21/06 Memo Endorsed Order.)

[2] To protect the privacy of the sexual assault victim, as required by N.Y. Civil Rights Law § 50-b, she will be referred to by her initials instead of name. The state trial transcript has been filed under seal because it refers to the victim by name (<u>see</u> Dkt. No. 8: Sealed Trial Transcript; Dkt. No. 7: 4/13/06 Memo Endorsed Order), as has Assistant Attorney General Chaffee's affidavit in opposition to Hardison's habeas petition and accompanying exhibits (Dkt. No. 11 (or 12): Chaffee Aff.).

[3] At trial, the prosecutor asked CM who she saw in the building and CM answered: "The person over there." (CM: Tr. 157.) The prosecutor sought to clarify the identification:

      Q:    Can you tell us what he is wearing today?

(continued...)

recognized Hardison from the neighborhood.  (CM: Tr. 158.)  CM asked Hardison if he would let her back into the building when she returned, because she did not have the key, and he said he would.  (CM: Tr. 158.)  Once outside, CM looked for the person who had called on the intercom but did not see anyone, so she returned to the building and Hardison let her in.  (CM: Tr. 158-59.)

CM proceeded up the stairs towards her friend's apartment.  (CM: Tr. 159.)  Hardison followed closely behind and when CM reached her friend's floor, Hardison put his hand over CM's mouth and, with his other hand, took the drugs and money she had in her pants pocket.  (CM: Tr. 159.)  Three of Hardison's friends emerged and all four pointed guns in her face.  (CM: Tr. 159.)  The four men told CM not to "say a f–in' thing" and took her up one flight into an apartment.  (CM: Tr. 159, 186-87.)

Once inside the apartment, the four men bound CM's hands and feet with duct tape and put her in a closet.  (CM: Tr. 159.)  While CM was in the closet, the men asked her to get her drug suppliers, "so they could get robbed or something."  (CM: Tr. 160.)  CM told them that the suppliers would not come into the building and that she had no way of calling them.  (CM: Tr. 160.)

---

[3/]     (...continued)

| | |
|---|---|
| A: | No.  No, I can't. |
| Q: | When you say that person over there, who do you mean? |
| A: | The defendant. |
| THE COURT: | There are two people seated at that table, one is in a suit; right? |
| THE WITNESS: | Okay.  The ones who is not in the suit. |
| THE COURT: | Indicating the defendant. |

(CM: Tr. 157.)

After a while, the four men took CM out of the closet and put her in the bathtub. (CM: Tr. 161.) Eventually, three of the men left the apartment, but Hardison remained. (CM: Tr. 161-62.)

Hardison carried CM from the bathtub into the living room where he put her on the sofa, her hands and feet still bound. (CM: Tr. 162.) Hardison tried to stick his penis in CM's mouth but she kept her mouth closed, so Hardison turned CM over onto her knees and tried to put his penis in her rectum, but when "it would not go in" he penetrated her vagina and ejaculated. (CM: Tr. 162-63.) Hardison "wiped [her] off, pulled [her] pants up, told [her] not to say [anything] and put [her] back in the bathtub like nothing never happened." (CM: Tr. 163.)

When the three other men returned to the apartment, they took CM out of the bathtub, cut the tape binding her legs and arms, and forced her to take the fire escape up to the roof. (CM: Tr. 163.) On the roof, one of the men tried to put a wire around CM's neck, but she struggled and the other three men started beating her on the face with their guns. (CM: Tr. 164.) One of the men finally caused the beating to stop and told CM to calm down so that nobody would hurt her further. (CM: Tr. 164-65.) The same man carried her over to a pole and tied her to it, but told her he had tied her loosely, so that she would be able to untie herself once they left; he asked that she "give them a chance to get away" before she untied herself. (CM: Tr. 165.)

Once the men left, CM untied herself and went down to the street where she flagged down a police car and, her face swollen and bruised, explained that she had been raped and robbed. (CM: Tr. 165; Martinez: Tr. 248-51.) CM described the man who had raped her as a black male with

braids, weighing approximately 168 pounds.  (Martinez: Tr. 251, 253.)  By this time it was the early morning hours of November 22.  (Martinez: Tr. 249.)

The police took CM to the hospital where the doctor photographed her face and took swabs of her mouth, rectum and vaginal area (comprising the Sexual Offense Evidence Collection Kit (Briones: Tr. 203, 217; Mullinax: Tr. 235)).  (CM: Tr. 166.)  CM gave the police and the hospital a fake name because, as a drug dealer, she did not want the police to know her real name.  (CM: Tr. 165-66.)

**2001 DNA Analysis**

In Spring 2000, the Office of the Chief Medical Examiner's Forensic Biology Laboratory became part of the New York State DNA data bank.  (Briones: Tr. 192-93, 197.)  The DNA data bank contains "hundreds of thousands of DNA profiles from known specimens." (Briones: Tr. 197.)  As a result of joining the State data bank, the police department began the "NYPD Backlog Program" which initiated the DNA testing of more than 10,000 sexual assault kits that had never been tested because there had been no known suspect and thus no DNA to compare to the sexual assault kits.  (Briones: Tr. 197-98.)

The DNA samples in CM's sexual assault kit were tested as part of the NYPD Backlog Program.  (Briones: Tr. 198.)  A criminalist from the Forensic Biology Laboratory analyzed the DNA from the anal, vaginal and oral swabs taken from CM at the hospital in November 1995 as well as a DNA sample from CM.  (Briones: Tr. 203.)  The analysis showed the presence of a male DNA profile in the anal and vaginal swabs, while the DNA in the oral swab belonged only to CM.

(Briones: Tr. 203-05.)   The criminalist entered the male DNA profile into the State data bank, generating an "investigative lead" that was provided to Manahattan Special Victims Squad detectives.  (Briones: Tr. 205.)  This led to an oral swab taken from Hardison and provided to the criminalist on July 24, 2001.  (Briones: Tr. 205, 207; McCallion: Tr. 229-30.)  A comparison analysis of the male DNA profile from the anal and vaginal swabs taken from CM in 1995 with Hardison's 2001 oral swab revealed that the DNA samples matched.  (Briones: Tr. 209-14.)  The criminalist concluded the male DNA found on CM in 1995 was from Hardison given the fact that Hardison's DNA profile occurs only once in every one trillion people.  (Briones: Tr. 214-15.)

**The Defense Case at Trial**

       **Cross-examination of CM**

Defense counsel cross-examined CM about the fake names and fake birth dates she had used over the years, as well as her criminal record and the fact that she was on parole at the time of the trial.  (CM: Tr. 168-72, 174.)

Defense counsel also cross-examined CM on her in-court identification of Hardison, eliciting from her that she had spoken to the Assistant District Attorney "more than five times" before testifying and that she knew <u>a</u> defendant would be in court seated next to an attorney.  (CM: Tr. 172-74.)  Defense counsel asked CM whether the only reason she identified Hardison in court was because he was the person sitting in the defendant's chair.  (CM: Tr. 173.)  CM answered that that was not the case and that "[h]is face is sketched in my f–in' mind forever."  (CM: Tr. 173.)  Defense counsel also brought out that CM had "most likely" been using drugs on the day of the

attack. (CM: Tr. 180.) Finally, defense counsel emphasized some inconsistencies in CM's recollection of the events of the attack. (CM: Tr. 176-83.)

### Hardison's Testimony

Kyle Hardison testified on his own behalf at trial. (Hardison: Tr. 255-61.) Hardison testified that he did not commit any of the acts about which CM testified and that he had never seen CM before her appearance in court. (Hardison: Tr. 256-58, 260.)

### Defense Counsel's Summation

Defense counsel acknowledged in summation that CM was the victim of the brutal crime which she described. (Def. Summation: Tr. 269.) However, defense counsel argued that CM's in-court identification of Hardison was unreliable – she merely testified that "it is the guy not wearing the suit." (Def. Summation: Tr. 270-71.) Defense counsel argued that CM identified the person she knew had been arrested, but that was not necessarily the person CM remembered from having raped and robbed her over six years before. (Def. Summation: Tr. 270-71.) According to defense counsel, "even drug dealers have a right . . . not to be raped, beaten and robbed and sodomized and brutalized but that does not make her immune from my questioning and her ability to make a credible identification in this case." (Def. Summation: Tr. 271.)

Defense counsel offered three possible reasons why CM would have difficulty remembering the accurate details of the incident: (1) it was six and one half years ago; (2) it was a traumatic experience which she may have partially blocked out; and (3) as a crack cocaine user her memory had deteriorated. (Def. Summation: Tr. 272-74.)

Defense counsel explained that Hardison testified because he "wanted you to hear the truth that he did not do this and does not know this woman." (Def. Summation: Tr. 279.)

**Prosecutor's Summation**

During her summation, the prosecutor discussed defense counsel's cross-examination of CM:

Now, you may remember yesterday that defense counsel asked many many questions of [CM] about aliases she has used, about dates of birth she has used, but you may also have noticed that there was not one single question asked of her about what happened to her on that couch.

[Defense Counsel] Lyons: Objection.

THE COURT: Overruled.

[ADA] Bashford: No[t] one single question about how she got beaten.

[Defense Counsel] Lyons: Objection.

THE COURT: Overruled.

[ADA] Bashford: Not one question about what happened on the roof.

[Defense Counsel] Lyons: Objection.

THE COURT: Overruled.

[ADA] Bashford: And that is so you focus on who she is and not what happened [to] her. . . .

(Summation: Tr. 283-84.)

At the conclusion of the prosecutor's summation, defense counsel asked for an on-the-record sidebar but the trial judge told him to wait until after the jury charge. (Tr. 291.)

**The Jury Charge**

The judge charged the jury, in pertinent part, about the presumption of innocence and the People's burden of proof:

> Under our law <u>every defendant is presumed to be innocent</u>. The presumption of innocence remains with him throughout the trial. He is given the protection of this presumption even when you go into the jury room to start your deliberations, it remains with him until such time, if ever, that you as jurors are convinced beyond a reasonable doubt from the proof submitted that he is guilty of the crime charged against him. When that point is reached, if it is, the presumption of innocence is destroyed and you would be justified in finding the defendant guilty. <u>This necessarily places the burden of proof on the People. A defendant is not required to prove anything.</u> The defendant is entitled to rest on the presumption of innocence until the presumption is so far outweighed by the evidence offered by the People that you, as jurors, are convinced of his guilt beyond a reasonable doubt. The burden of proof is on the People also means that the People must establish each and every element of the crime with which the defendant is charged, to your satisfaction, beyond a reasonable doubt.

(Charge: Tr. 300-01, emphasis added.) Neither the defense nor the prosecution objected to the charge. (Tr. 320-21.)

At the conclusion of the charge, defense counsel objected to the prosecutor's summation, contending that the reference to questions not asked during the defense's cross-examination of CM shifted the burden of proof to the defense and that the defense does not have "any burden to ask anything or prove anything." (Tr. 321.) Defense counsel requested a curative instruction, but the trial judge did not "see a need to correct anything." (Tr. 321.)

**Verdict and Sentence**

The jury found Hardison guilty of first degree rape and guilty of one count of first degree sodomy (dealing with anal contact), but acquitted Hardison of one count of first degree sodomy (dealing with contact with CM's mouth) and the three robbery counts. (Verdict: Tr. 328-29; see also Tr. 308-09.)

On March 12, 2002, Hardison was sentenced to 12 and one half to 25 years on both counts to run consecutively. (3/12/02 Sentencing Transcript ["S"] 5.) At sentencing, defense counsel asked the court to consider the fact that Hardison had been acquitted of four out of the six indicted counts and that "in light of our plea negotiations pretrial, that the sentence be imposed should be better than that we discussed when he would have been plead to the indictment." (S. 4.)[4]

In imposing Hardison's sentence, the trial judge stated:

> In the plea negotiations he was offered 20 years. However, that was to avoid the victim in this case having to come to court to relive the horrible experiences she went through at the time of the rape in November of 1995. However, she did not have an opportunity to avoid reliving that horrible experience because the Defendant chose to put the People to its proof and the victim did have to come to court and face the person who raped her seven years ago. It was obviously very difficult testimony for her to give as from the witness stand.

(S. 4-5.) In light of that fact as well as Hardison's four prior felony convictions, the trial judge sentenced Hardison to consecutive sentences of 12 and a half to 25 years imprisonment. (S. 5.)

---

[4] Before the pre-trial motions and before the voir dire in Hardison's trial the court noted on the record that there was an offer of 12 and one half to 25 years and if Hardison went to trial he risked consecutive sentencing should he lose. (Tr. 2.) Defense counsel said he had fully informed Hardison of the risks of a 25-50 year sentence and of going to trial in a DNA case. (Tr. 2-3.)

**Hardison's Direct Appeal**

Represented by the Center for Appellate Litigation, Hardison's appeal to the First Department raised three claims: (1) the prosecutor's comments during summation deprived him of a fair trial (Chaffee Aff. Ex. A: Hardison 1st Dep't Br. at 12-19); (2) the statutory provisions authorizing the taking of a DNA sample from Hardison and placing his DNA in a statewide data bank are unconstitutional on their face and as applied "because they authorized an unreasonable search" (id. at 20-21); and (3) the imposition of consecutive sentences was improper (id. at 22-29).

On March 30, 2004, the First Department affirmed Hardison's conviction, holding:

> In view of the court's thorough instructions on the People's burden of proof, there is no reasonable possibility that the jury could have construed the challenged portion of the People's summation as shifting that burden to the defense. Furthermore, were we to find any error, we would find it to be harmless in view of the overwhelming evidence of defendant's guilt.
>
> . . .
>
> The court properly imposed consecutive sentences for the rape and sodomy, which were separate and discrete acts. We perceive no basis for reducing the sentence.

People v. Hardison, 5 A.D.3d 312, 313, 773 N.Y.S.2d 550, 550-51 (1st Dep't 2004) (citations omitted).

On May 28, 2004, the New York Court of Appeals denied leave to appeal. People v. Hardison, 2 N.Y.3d 800, 781 N.Y.S.2d 299 (2004).

**Hardison's C.P.L. § 440 Motion**

In May 2005, Hardison filed a C.P.L. § 440 motion to vacate judgment, claiming ineffective assistance of trial counsel. (Chaffee Aff. Ex. G: Hardison § 440 Aff.) Hardison claimed his trial counsel was ineffective for failing "to raise a statute of limitations defense on [his] behalf . . . and that [Hardison] was prejudiced by trial counsel's unprofessional error in that had he raised such defense dismissal of the indictment would have been required pursuant to C.P.L. § 30.10(2)(b) and 210.20(1)(f)." (Hardison § 440 Aff. ¶ 7.)

On June 27, 2005, the § 440 court denied Hardison's motion. (Chaffee Aff. Ex. I: 6/27/05 Decision & Order.)   The § 440 court concluded that, pursuant to § 440.10(2), relief was "unavailable" because "[s]ufficient facts appear on the record concerning trial counsel's alleged failure to seek dismissal of the indictment on statute of limitations grounds to permit adequate review on appeal." (6/27/05 Decision & Order at 2.)[5] Alternatively, the § 440 court held Hardison's claim was without merit. (6/27/05 Decision & Order at 2-4.) The court found that the five-year statute of limitations had been tolled by C.P.L. § 30.10(4)(a)(ii) (which excludes time where the

---

[5]    As the State points out, the § 440 court based its conclusion on § 440.10(2)(b), which refers to direct appeals that are still pending. (See Dkt. No. 10: State Br. at 11 n.7.) Hardison's appeal was no longer pending at the time of his § 440 motion. Therefore, § 440.10(2)(b) did not apply to his motion; rather § 440.10(2)(c), which applies to cases in which the direct appeal has been exhausted, was the applicable section. However, as the State points out, both sections apply to § 440 motions in which sufficient facts were on the record at the time of the direct appeal; the sections differ only on the status of the direct appeal at the time the claim is before the § 440 court. Therefore, the Court considers the mistake immaterial.

defendant's whereabouts are unknown),[6] until March 2001, when Hardison's identity became known, and that Hardison had "not met his burden of establishing the People's lack of reasonable diligence." (6/27/05 Decision & Order at 3-4.)[7] Therefore, even though Hardison was not prosecuted until over five years after the commission of the crime, his prosecution was timely. (Id.) Consequently, a motion to dismiss the indictment on statute of limitations grounds would have been meritless and Hardison's attorney could not have been ineffective for failing to raise a "fruitless" claim. (Id. at 4.)

On November 10, 2005 the First Department denied Hardison leave to appeal. People v. Hardison, M-3871 (Chaffee Aff. Ex. L: 11/10/05 1st Dep't Certificate Denying Leave).

---

[6]     C.P.L. § 30.10(4) provides:

> In calculating the time limitation applicable to commencement of a criminal action, the following periods shall not be included:
>
> (a) Any period following the commission of the offense during which . . . (ii) the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence. However, in no event shall the period of limitation be extended by more than five years beyond the period otherwise applicable under subdivision two.

[7]     As part of the State's response to Hardison's § 440 motion, Assistant District Attorney Martha Bashford (who had prosecuted Hardison's case) submitted an affidavit explaining the time-frame during which Hardison's DNA sample was taken and when he was identified as the alleged perpetrator of the crime charged. (Chaffee Aff. Ex. H: 6/7/05 ADA Bashford Aff.) The affidavit explains that Hardison provided a DNA sample to the "Convicted Offender DNA Databank on January 11, 2000." (Id. ¶ 5.) CM's sexual assault kit was tested as part of the NYPD Backlog Program in 2000. (Id.) "In March, 2001 a 'cold hit' matching [Hardison's] convicted offender sample to the semen sample from [CM's] vaginal swab was announced to OCME [the Office of the Chief Medical Examiner] by DCJS and OCME notified the New York County District Attorney's Office of this match to [Hardison]." (Id.) The indictment charging Hardison was filed in June 2001. (Id. ¶ 6.)

**Hardison's Federal Habeas Petition**

Hardison's habeas petition raises three grounds: (1) ineffective assistance of trial counsel for failure to make a motion to dismiss on statute of limitations ground (Pet. ¶ 12(1) & Att. at 1-4); (2) deprivation of a fair trial resulting from the prosecutor shifting the burden of proof through summation comments (Pet. ¶ 12(2) & Att. at 5-10) and; (3) "[i]llegal and unconstitutional consecutive sentences" in violation of the Eighth and Fourteenth Amendments (Pet. ¶ 12(3) & Att. at 11-14).[8]

## ANALYSIS

### I.    THE AEDPA REVIEW STANDARD[9]

---

[8]    Hardison's petition raised a fourth claim alleging violation of his right to confrontation (Pet. ¶ 12(4)) which Hardison subsequently withdrew. (Dkt. No. 6: 2/21/06 Memo Endorsed Peck Order.)

[9]    For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *13-16 (S.D.N.Y. May 1, 2006) (Peck, M.J.); Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *5-8 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.); Hopkins v. Burge, 05 Civ. 8230, 2006 WL 519782 at *7-10 (S.D.N.Y. Mar. 3, 2006) (Peck, M.J.); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.); Ellis v. Phillips, 04 Civ. 7988, 2005 WL 1637826 at *9-11 (S.D.N.Y. July 13, 2005) (Peck, M.J.); Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *7-10 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *14-17 (June 10, 2005 S.D.N.Y) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *9-11 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *5-8 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my earlier cases); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003)
(continued...)

Before the Court can determine whether Hardison is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[10/]

---

[9/] (...continued)
(Peck, M.J.) (citing my earlier cases); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), <u>aff'd</u>, 368 F.3d 179 (2d Cir. 2004); <u>Mendez</u> v. <u>Artuz</u>, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) (McKenna, D.J.), <u>aff'd</u>, 303 F.3d 411, 417 (2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1245, 123 S. Ct. 1353 (2003); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, 41 Fed. Appx. 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

[10/] See also, e.g., <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 67 (2d Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 1622 (2006); <u>Howard</u> v. <u>Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d (continued...)

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[11/] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[12/] "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state

---

[10/]    (...continued)
193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[11/]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[12/]    Accord, e.g., Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (U.S. 2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

court unreasonably applied Second Circuit precedent." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>, <u>e.g.</u>, <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[13]

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[14] However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different

---

[13]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[14]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2534-35; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 233, 246 (2d Cir. 2006); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

from an <u>incorrect</u> application of federal law." <u>Id</u>.[15/] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[16/] "Objectively unreasonable" is different from "clear error." <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S.</u> v. <u>Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).[17/] "[T]he range of reasonable

---

[15/] See also, e.g., <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 123 S. Ct. at 1853 ("As we have explained, 'a federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[16/] Accord, e.g., <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Lynn</u> v. <u>Bliden</u>, 2006 WL 805527 at *6-7; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

[17/] Accord, e.g., <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. (continued...)

judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[18]

      Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[19]

---

[17]    (...continued)
Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[18]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.

[19]    Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254." Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected

defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct.

110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even

more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").[20]

"By its terms, § 2254(d) requires such deference only with respect to a state-court 'adjudication on

the merits,' not to a disposition 'on a procedural, or other, ground.' Where it is 'impossible to discern

---

[20]      Accord, e.g., Cox v. Donnelly, 387 F.3d at 197 ("Neither the Appellate Division nor the New York Court of Appeals addressed [petitioner's] argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether Strickland was applied unreasonably."); Dallio v. Spitzer, 343 F.3d at 559-60; Parsad v. Greiner, 337 F.3d at 180-81; Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); Eze v. Senkowski, 321 F.3d at 121; Ryan v. Miller, 303 F.3d at 245; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir.), cert. denied, 537 U.S. 1093, 123 S. Ct. 694 (2002); Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

The Second Circuit "recognize[d] that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the 'unreasonable application' or 'contrary to' tests." Sellan v. Kuhlman, 261 F.3d at 312. Where the state court does not explain its reasoning, the Second Circuit articulated the analytic steps to be followed by a federal habeas court:

> We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has been adjudicated "on the merits" by a state court. As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999).

Sellan v. Kuhlman, 261 F.3d at 314; accord, e.g., Cotto v. Herbert, 331 F.3d at 230; Eze v. Senkowski, 321 F.3d at 121-22; Norde v. Keane, 294 F.3d at 410; Aparicio v. Artuz, 269 F.3d at 93; see also Dallio v. Spitzer, 343 F.3d at 560.

the Appellate Division's conclusion on [the relevant] issue,' a federal court should not give AEDPA deference to the state appellate court's ruling." <u>Miranda</u> v. <u>Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003) (citations omitted).[21/] Of course, "[i]f there is no [state court] adjudication on the merits, then the pre-AEDPA, <u>de novo</u> standard of review applies." <u>Cotto</u> v. <u>Herbert</u>, 331 F.3d at 230.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181 (quoting § 2254(e)(1)); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47.

---

[21/]    The Second Circuit in <u>Miranda</u> v. <u>Bennett</u> continued: "Generally, when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the 'without merit' part of the disjunct even if it was not expressly discussed by the Appellate Division." <u>Id</u>. at 178.

## II.      HARDISON'S INEFFECTIVE ASSISTANCE CLAIM IS BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS

Hardison claims that he received ineffective assistance of counsel because his trial attorney failed to move to dismiss the indictment on statute of limitations grounds. (Dkt. No. 2: Pet. ¶ 12(1) & Att. at 1-4.) The § 440 court denied Hardison's motion pursuant to C.P.L. § 440.10(2),[22/] holding:

> Sufficient facts appear on the record concerning trial counsel's alleged failure to seek dismissal of the indictment on statute of limitations grounds to permit adequate review on appeal. Therefore, relief pursuant to C.P.L. §440.10 is unavailable.

(Chaffee Aff. Ex. I: 6/27/05 Decision & Order at 2; see pages 12-13 above.) Because the state court's decision was based on an adequate and independent state law ground, Hardison's ineffective assistance claim is barred from federal habeas review.

---

[22/]      C.P.L. § 440.10 provides in pertinent part:

> 2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:
> . . .
> (b) The judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal; or
>
> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .

**A.** **Adequate and Independent State Ground Doctrine**[23/]

       The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[24/]

---

[23/]    For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *34 (S.D.N.Y. May 1, 2006) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *22-23 (June 10, 2005 S.D.N.Y.) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *20-21 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005) (Casey, D.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004)(Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *21-23 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005) (Castel, D.J.); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001) (Mukasey, D.J.), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22134571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324 (table), 2000 WL 246226 (2d Cir. Feb. 22, 2000).

[24/]    See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); (continued...)

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[25/] Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails

---

[24/]    (...continued)
Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[25/]    See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

**B.    Hardison's Ineffective Assistance Claim is Procedurally Barred**

The § 440 court held Hardison's ineffective assistance of trial counsel claim was procedurally barred pursuant to C.P.L. § 440.10(2).  (See pages 12-13 above.)  The cases in this Circuit hold that C.P.L. § 440.10(2) is an "adequate and independent" state procedural ground barring federal habeas review.  See, e.g., Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003) (petitioner's ineffective assistance claim was "well-established in the trial record" and could have been brought on direct appeal and § 440.10(2)(c) was an adequate and independent state law ground that barred federal habeas review); Davis v. Mantello, 42 Fed. Appx. 488, 490 (2d Cir. 2002) ("The unjustifiable failure to raise on direct appeal a claim that appears on the face of the record is a procedural default under New York law and therefore constitutes an independent and adequate state ground for the state court's rejection of the petitioner's claim."), cert. denied, 538 U.S. 986, 123 S. Ct. 1803 (2003); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Dorsey v. Irvin, 56 F.3d 425, 426 (2d Cir. 1995); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (§ 440.10(2)(c) is adequate and independent state ground); Johnson v. Sabourin, 03 Civ. 0791, 2005 WL 2663039 at *3-5 (S.D.N.Y. Oct. 13, 2005) (§ 440 court's denial of ineffective assistance claims based on facts in trial record pursuant to C.P.L. § 440.10(2)(b) was an adequate and independent state law ground barring federal habeas review); Gillespie v. Miller, 04 Civ. 0295, 2004 WL 1689735 at *12 (S.D.N.Y. July 29, 2004) (Peck, M.J.) (state court's denial of ineffective assistance

claim under C.P.L. § 440.10(2) because it could have been raised on direct appeal is adequate and independent ground); Ramos v. Costello, 96 Civ. 3659, 1997 WL 231129 at *2 (S.D.N.Y. May 7, 1997) ("The procedural ground on which the state court denied his § 440.10 motion" – "namely, that they were barred by a New York rule precluding claims that could have been raised on direct appeal but were not" – "is an independent and adequate state ground that prevents him from asserting those claims in a federal habeas corpus proceeding absent cause and prejudice."); Wells v. LaFavre, 96 Civ. 3417, 1996 WL 692003 at *3 (S.D.N.Y. Dec. 2, 1996) ("C.P.L. § 440.10(2) presents an adequate and independent state ground for denying Petitioner relief.").[26/]

Because there is an adequate and independent finding by the state § 440 court that Hardison had procedurally defaulted the ineffective assistance claim raised in his § 440 motion, Hardison would have to show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct.

---

[26/]     See also, e.g., Flowers v. Irvine, No. 94-CV-2240, 1995 WL 669913 at *4 (E.D.N.Y. Oct. 31, 1995) ("The state court dismissed his claim as 'procedurally defective' because he could have argued this claim previously on direct appeal to the Appellate Division . . . and did not. The decision of the state court in this case clearly rested on state law."); Sykes v. Scully, No. 90-CV-4302, 1992 WL 151896 at *2 (E.D.N.Y. June 16, 1992) (" §§ 440.10(2)(a) and 440.20(2) mandate that such claims are barred from review. This court therefore treats such claims as exhausted and procedurally barred under state law . . ."); Esquilin v. Walker, No. CV-91-4608, 1992 WL 151903 at *3 (E.D.N.Y. June 16, 1992) ("Collateral review is barred since the claim was raised on direct appeal to the Appellate Division. N.Y. C.P.L. § 440.10(2)(a) (collateral review unavailable for claims raised on direct appeal). . . . Therefore, the claim of prosecutorial misconduct must be denied as barred by an independent and adequate state procedural ground."), aff'd, 990 F.2d 624 (2d Cir. 1993).

2546, 2565 (1991).  Hardison does not allege cause, prejudice or a fundamental miscarriage of justice.  Thus, Hardison's ineffective assistance of trial counsel claim is procedurally barred from habeas review and should be denied.[27/]

---

[27/]     Alternatively, as the § 440 court held, Hardison's claim fails on the merits.  Pursuant to C.P.L. § 30.10(b), the statute of limitations for first degree rape and first degree sodomy is five years.  It is undisputed that the prosecution of Hardison did not commence until 2001, approximately five and one half years after the incident occurred.  (Dkt. No. 10: State Br. at 14; Pet. Att. at 2.)  However, the tolling provision of C.P.L. § 30.10(4)(a)(ii), quoted on page 13 n.6 above, provides that where the "whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence" the statute of limitations shall be tolled.  New York courts have applied this tolling provision to cases in which a defendant's identity was unknown until the advent of DNA profiling enabled identification through the State DNA data bank.  People v. Grogan, ___ N.Y.S.2d ___, 2006 WL 947760 at *1 (2d Dep't Apr. 11, 2006); People v. Lloyd, 23 A.D.3d 296, 297, 805 N.Y.S.2d 20, 21 (1st Dep't), appeal denied, 6 N.Y.3d 755, 810 N.Y.S.2d 423 (2005); People v. Harrison, 22 A.D.3d 236, 236-37, 803 N.Y.S.2d 5, 6 (1st Dep't), appeal denied, 6 N.Y.3d 754, 810 N.Y.S.2d 422 (2005); People v. Sawyer, 2003 WL 1085898 at *7-8 (N.Y. Sup. Ct. Queens Cty. Feb. 25, 2003); see generally People v. Seda, 93 N.Y.2d 307, 311-13, 690 N.Y.S.2d 517, 518-20 (1999).

Hardison bears the burden of showing the State did not exercise "reasonable diligence."  See People v. Lloyd, 23 A.D.3d at 297, 805 N.Y.S.2d at 21.  According to the state's affidavit in support of its opposition to Hardison's § 440 motion, Hardison's identity became discoverable in March 2001 – until which time the statute of limitations was tolled – and the indictment charging Hardison was filed in June 2001.  (See page 13 n.7 above.)  Thus, the prosecution of Hardison was timely and a motion to dismiss the indictment would have been meritless.  Hardison's trial counsel could not be found ineffective for failing to raise a meritless claim.  See, e.g., James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *16 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.) ("[C]ounsel cannot be ineffective for failing to raise a meritless claim.") (citing cases); McPherson v. Greiner, 02 Civ. 2726, 2003 WL 22405449 at *22 (S.D.N.Y. Oct. 22, 2003) (Peck, M.J.) (trial counsel not ineffective for failing to raise meritless argument) (& cases cited therein).

### III. HARDISON'S CLAIM THAT THE PROSECUTOR'S COMMENTS DURING SUMMATION DEPRIVED HIM OF A FAIR TRIAL IS WITHOUT MERIT AND SHOULD BE DENIED

#### A. Federal Habeas Review Standard for Prosecutorial Misconduct Claims[28]

Prosecutorial misconduct violates a defendant's due process rights only when it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); accord, e.g., United States v. Best, 142 Fed. Appx. 500, 501 (2d Cir.) ("We must examine whether the prosecutor's actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"), cert. denied, 126 S. Ct. 770 (2005); United States v. Muja, 102 Fed. Appx. 212, 216 (2d Cir. 2004) ("'It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'"); United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore a conviction will be reversed, a prosecutor's comments on summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' The defendant must point to 'egregious misconduct.'") (quoting Donnelly v. DeChristofaro, 416 U.S. 637, 643, 647, 94 S. Ct.

---

[28] For additional decisions by this Judge discussing the federal habeas review standard for prosecutorial misconduct claims in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *15 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *17-18 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *11 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *20 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.) (citing my prior cases).

1868, 1871, 1873 (1974)); <u>United States</u> v. <u>Elias</u>, 285 F.3d 183, 190 (2d Cir.) ("To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotations omitted), <u>cert. denied</u>, 537 U.S. 988, 123 S. Ct. 430 (2002); <u>United States</u> v. <u>McCarthy</u>, 54 F.3d 51, 55 (2d Cir. 1995), <u>cert. denied</u>, 516 U.S. 880, 116 S. Ct. 214 (1995); <u>Blisset</u> v. <u>LeFevre</u>, 924 F.2d 434, 440 (2d Cir.), <u>cert. denied</u>, 502 U.S. 852, 112 S. Ct. 158 (1991).[29] Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" <u>Tejada</u> v. <u>Senkowski</u>, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), <u>aff'd mem.</u>, 23 F.3d 397 (2d Cir.), <u>cert. denied</u>, 513 U.S. 887, 115 S. Ct. 230 (1994).[30]

---

[29]  See also, <u>e.g.</u>, <u>Brown</u> v. <u>Schultz</u>, 03 Civ. 3320, 2006 WL 156983 at *10 (S.D.N.Y. Jan. 18, 2006); <u>Trinidad</u> v. <u>Annetts</u>, 04 Civ. 9685, 2005 WL 2792398 at *4-5 (S.D.N.Y. Oct. 26, 2005); <u>Readdon</u> v. <u>Senkowski</u>, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct. 13, 1998); <u>Hurd</u> v. <u>Keane</u>, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept. 19, 1997); <u>Beverly</u> v. <u>Walker</u>, 899 F. Supp. 900, 911 (N.D.N.Y. 1995), <u>aff'd</u>, 118 F.3d 900 (2d Cir.), <u>cert. denied</u>, 522 U.S. 883, 118 S. Ct. 211 (1997); <u>Washington</u> v. <u>Walker</u>, 89 Civ. 7841, 1994 WL 391947 at *3 (S.D.N.Y. July 28, 1994) ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting <u>Floyd</u> v. <u>Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>Garofolo</u> v. <u>Coombe</u>, 804 F.2d 201, 206 (2d Cir. 1986))).

[30]  Accord, <u>e.g.</u>, <u>Franza</u> v. <u>Stinson</u>, 58 F. Supp. 2d 124, 149 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); <u>see also</u>, <u>e.g.</u>, <u>Donnelly</u> v. <u>DeChristoforo</u>, 416 U.S. 637, 647, 94 S. Ct. 1868, 1873 (1974); <u>Floyd</u> v. <u>Meachum</u>, 907 F.2d at 355 (quoting <u>Garofolo</u> v. <u>Coombe</u>, 804 F.2d at 205); <u>Edmonds</u> v. <u>McGinnis</u>, 11 F. Supp. 2d 427, 437 (S.D.N.Y. 1998); <u>Gaiter</u> v. <u>Lord</u>, (continued...)

To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." Blisset v. LeFevre, 924 F.2d at 440; accord, e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context'"); United States v. Best, 142 Fed. Appx. at 501; United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986).[31]

**B.** **Application of the Standard to Hardison's Prosecutorial Misconduct Claim**

Hardison claims that the prosecutor's comments during summation shifted the burden of proof to the defense, depriving him of a fair trial. (Dkt. No. 2: Pet. ¶ 12(2) & Att. at 5-10.) The prosecutor made the comments at issue in her discussion of the defense attorney's cross-examination of CM:

> Now, you may remember yesterday that defense counsel asked many many questions of [CM] about aliases she has used, about dates of birth she has used, but you may also have noticed that there was not one single question asked of her about what happened to her on that couch.
>
> . . .

---

[30] (...continued)
917 F. Supp. 145, 153 (E.D.N.Y. 1996); Jones v. Kuhlmann, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec. 12, 1995).

[31] See also, e.g., Brown v. Schultz, 2006 WL 156983 at *10; Trinidad v. Annetts, 2005 WL 2792398 at *5; Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F. Supp. at 911.

[ADA] BASHFORD:  No[t] one single question about how she got beaten.

. . .

[ADA] BASHFORD:  Not one question about what happened on the roof.

. . .

[ADA] BASHFORD:  And that is so you focus on who she is and not what happened [to] her. . . .

(Summation: Tr. 283-84.)

While commenting on the defense's failure of proof can be constitutionally suspect, especially when such commentary points out the defendant's failure to testify, that did not occur here. See, e.g., Ware v. New York, 412 F. Supp. 2d 236, 244 (W.D.N.Y. 2005) ("A constitutional violation does not occur unless the remark necessarily implicates the defendant's own failure to testify."); Garcia v. Artuz, 00 Civ. 4921, 2002 WL 927823 at *6 (S.D.N.Y. May 8, 2002) ("While the Fifth Amendment prohibits the prosecutor from commenting on a defendant's failure to testify on his own behalf, it provides no such prohibition on prosecutorial comment about a defendant's failure to call witnesses or present evidence to support the defendant's own factual theory."), aff'd, 78 Fed. Appx. 790 (2d Cir. 2003).

Here, the prosecutor's remarks were a fair response to the defense counsel's summation in which he focused on impeaching CM's credibility and the reliability of CM's in-court identification of Hardison.  (See page 7 above.)  Under New York law, statements during summation are permissible if they constitute a "fair comment on the evidence" at trial and reasonable inference therefrom, or a "fair response to remarks made by the defense counsel during summation."  People

v. Perez, 18 A.D.3d 480, 480, 794 N.Y.S.2d 439, 440 (2d Dep't 2005); accord, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *18 (S.D.N.Y. June 10, 2005) (Peck, M.J.) (citing N.Y. cases).[32]

The prosecutor's remarks urged the jury to focus on the actual incident and to note that while CM might have the checkered past defense counsel emphasized in his summation, it did not change the fact that she was brutally beaten and raped. The trial court overruled the defense counsel's objections, ruling no improper statements were made, and this Court agrees; the prosecutor's comments were not delivered with the purpose of shifting the burden of proof to Hardison. See, e.g., Smith v. Donnelli, No. 03-CV-3464, 2004 WL 1635831 at *8 (E.D.N.Y. July 22, 2004) ("The prosecutor was merely trying to counter defense counsel's attempts to depict the prosecution witnesses as unbelievable. . . . The gist of the prosecutor's remarks was that if [the witnesses] had made inconsistent prior statements to the police or the prosecutor about the shooting, the jury would have learned of them through cross-examination. . . . [T]he argument had neither the purpose nor the effect of shifting a burden to the defendant.")

Further, even if the prosecutor's comments could be construed as improper, the comments, as the First Department held (see page 11 above), were harmless error. See, e.g., Murray

---

[32] See also, e.g., People v. Seit, 86 N.Y.2d 92, 99, 629 N.Y.S.2d 998, 1001 (1995) (Prosecutor's comments did not warrant reversal when made in "fair response to defense counsel's summation"); People v. Halm, 81 N.Y.2d 819, 821, 595 N.Y.S.2d 380, 381 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); People v. Vasquez, ___ N.Y.S.2d ___, 2006 WL 1120445 at * 1 (4th Dep't Apr. 28, 2006); People v. Bello, 24 A.D.3d 236, 237, 808 N.Y.S.2d 164, 166 (1st Dep't 2005); People v. Parrella, 4 A.D.3d 132, 132, 771 N.Y.S.2d 511, 512 (1st Dep't), appeal denied, 2 N.Y.3d 804, 781 N.Y.S.2d 303 (2004).

v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *16 (S.D.N.Y. June 29, 2005) (Peck, M.J.) ("[A]ssuming arguendo that any impropriety were cognizable under federal habeas review, the prosecutor's statement, in the context of the entire trial, would constitute harmless error.")  The evidence of Hardison's guilt was overwhelming – not only did CM identify him in court but the male DNA found on CM matched Hardison's, with the likelihood of someone else matching the DNA being one in one trillion.  (See pages 2-3 n.3, 6 above.)

Finally, the trial court instructed the jury that the presumption of innocence "remains with [Hardison] throughout the trial" and that it "remains with him until such time, if ever, that you as jurors are convinced beyond a reasonable doubt from the proof submitted that he is guilty of the crime charged against him." (See page 9 above.)  Further, the court's charge stated that "the burden of proof [is] on the People" and that "[a] defendant is not required to prove anything." (See page 9 above.)  The trial court's charge to the jury on the burden of proof adequately addressed any prejudice that may have resulted from the prosecutor's summation.  See, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1271 (2d Cir.) (trial court's instruction on the burden of proof, which included language that the presumption of innocence remains with the defendant unless the jury finds the People proved their case beyond a reasonable doubt and that the burden of proof never shifts to the defendant, "likely corrected any misperception the jury may have held" as a result of the prosecution's comments.), cert. denied, 519 U.S. 834, 117 S. Ct. 106 (1996); Ware v. New York, 412 F. Supp. 2d at 244 ("[W]hatever ambiguity may have been caused by the [prosecutor's] remark with respect to the burden proof was clarified by the trial judge's instruction that the People bore the burden of proof

as to every element of the crime charged and that the burden never shifted to the defendant."); <u>Peakes</u> v. <u>Spitzer</u>, 04 Civ. 1342, 2004 WL 1366056 at *18 & n.29 (S.D.N.Y. June 16, 2004) (Peck, M.J.) ("[I]mmediately following the prosecutor's summation, the judge's charge informed the jury that the 'burden [of proof] remains upon the prosecution throughout the trial and never shifts to the defendant' and that '[n]o defendant is required to prove his innocence.'"), <u>report & rec. adopted</u>, 2004 WL 1656568 (S.D.N.Y. July 23, 2004) (Berman, D.J.); <u>Crawford</u> v. <u>Keane</u>, 00 Civ. 6672, 2001 WL 913947 at *6 (S.D.N.Y. Aug. 14, 2001) ("[T]he jury charge cured any effect that inappropriate prosecutorial comments might have had on the jury . . . . Here, the charge stated that the burden of proof 'never shifts from the People to a defendant' but 'remains on people throughout the trial and until the jury has reported its verdict.'").

The state courts' decisions denying Hardison's prosecutorial misconduct claim do not constitute an unreasonable application of federal law. Even without regard to AEDPA deference, this Court agrees that Hardison's prosecutorial misconduct claim is without merit, and should be denied.

## IV. HARDISON'S CLAIM THAT HIS RAPE AND SODOMY SENTENCES SHOULD RUN CONCURRENTLY NOT CONSECUTIVELY SHOULD BE DENIED

### A. Hardison's Consecutive Sentences Were Lawful Pursuant to State Law

Hardison asserts that the imposition of consecutive sentences for the rape and sodomy convictions was "illegal and unconstitutional." (Dkt. No. 2: Pet. ¶ 12(3).) According to Hardison, his sentences should have been ordered to run concurrently because "the rape and sodomy were part

and parcel of a single assault which under New York appellate court precedents prohibited successive or consecutive punishment." (Pet. Att. at 11.)

The First Department held that the trial court "properly imposed consecutive sentences for the rape and sodomy, which were separate and discrete acts." People v. Hardison, 5 A.D.3d 312, 313, 773 N.Y.S.2d 550, 551 (1st Dep't 2004).

Although Hardison introduces the word "unconstitutional" one time in his habeas petition, the claim was presented to the state courts solely as an issue of state law; no federal case law was cited nor any vague mention of terms such as "fair trial" or "unconstitutional" conduct. (See Chaffee Aff. Ex. A: Hardison 1st Dep't Br. at 22-29; Chaffee Aff. Ex. D: 4/28/04 Letter to N.Y. Court of Appeals at 1-2.) Accordingly, Hardison did not raise any constitutional issue about his sentence before the state courts. As such, his sentencing claim is unexhausted, but deemed exhausted and procedurally barred. See generally Ellis v. Phillips, 04 Civ. 7988, 2005 WL 1637826 at *16-18 (S.D.N.Y. July 13, 2005) (Peck, M.J.) (setting forth at length the legal standard governing claims which are unexhausted but deemed exhausted and procedurally barred, & cases cited therein)

Even if the claim were not procedurally barred, as a matter of state law, because the rape and sodomy counts constituted distinct acts, this claim should be denied.

New York Penal Law § 70.25(2) bars the imposition of consecutive sentences "on a person for two or more offenses committed through a single act or omission."[33/] The New York Court of Appeals in People v. Laureano analyzed Penal Law § 70.25(2) as follows:

> Because both prongs of Penal Law § 70.25(2) refer to the "act or omission," that is, the "*actus reus*" that constitutes the offense the court must determine whether the *actus reus* element is, by definition, the same for both offenses (under the first prong of the statute), or if the *actus reus* for one offense is, by definition, a material element of the second offense (under the second prong). If it is neither, then the People have satisfied their obligation of showing that concurrent sentences are not required. If the statutory elements do overlap under either prong of the statute, the People may yet establish the legality of consecutive sentencing by showing that the "acts or omissions" committed by defendant were separate and distinct acts.

People v. Laureano, 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 152 (1996) (citations omitted); accord, e.g., Ellis v. Phillips, 2005 WL 1637826 at *19; People v. Parks, 95 N.Y.2d 811, 814-15 & n.2, 712 N.Y.S.2d 429, 430 & n.2 (2000).

For example, if a shooter injures two victims with a single bullet, the two offenses are considered to be "committed through a single act." Penal Law § 70.25(2).[34/] If, however, the two

---

[33/]   Penal Law § 70.25(2) provides:

> When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences, except if one or more of such sentences is for a violation of section 270.20 of this chapter, must run concurrently.

[34/]   See, e.g., Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *36 (S.D.N.Y. Dec. 11, 2002) (Peck, M.J.) (where facts showed that habeas petitioner shot two victims with separate bullets, and not a "single bullet," petitioner could be sentenced consecutively under New York law for murder and assault); People v. McFadden, 180 A.D.2d 825, 826-27, 580

(continued...)

victims were hit by separate bullets, consecutive sentences are appropriate under New York law, even if the shooter's intent was to hit only one of the victims.  See People v. Brathwaite, 63 N.Y.2d 839, 843, 482 N.Y.S.2d 253, 256 (1984) (consecutive sentences upheld; "although the two deaths may be said to have occurred in the course of a single extended transaction, the robbery, it was separate 'acts' which caused the two deaths (i.e., there is no contention that it was the firing of the same gunshot that killed both of the two nonparticipants), and neither was a material element of the other.").[35]

According to Penal Law §§ 130.35(1) and 130.50(1), the actus reus elements for first degree rape and sodomy charges which Hardison was convicted of are sexual intercourse and anal or oral sexual conduct by forcible compulsion.  Further, Penal Law § 130.00(8) defines "forcible

---

[34]     (...continued)
N.Y.S.2d 406, 407 (2d Dep't) (concurrent, rather than consecutive, sentences imposed where single bullet caused injuries to two victims), appeal denied, 79 N.Y.2d 1004, 584 N.Y.S.2d 458 (1992); People v. Luster, 148 A.D.2d 305, 306, 538 N.Y.S.2d 273, 274 (1st Dep't) (same), appeal denied, 74 N.Y.2d 666, 543 N.Y.S.2d 409 (1989).

[35]     Accord, e.g., Rivera v. Duncan, 00 Civ. 4923, 2001 WL 1580240 at *12-13 (S.D.N.Y. Dec. 11, 2001) (Peck, M.J.) (where facts showed that petitioner shot two victims with separate bullets, and not a "single bullet," petitioner could be sentenced consecutively under New York law for the two injuries); People v. Rivera, 262 A.D.2d 31, 31, 692 N.Y.S.2d 313, 313 (1st Dep't) ("A review of the trial evidence, including evidence of the firing of five to six shots, each of which constituted a separate act . . . , as well as the circumstances surrounding the shooting of the two individuals, establishes that there was a sufficient factual basis for the court to conclude that the victims were wounded by different bullets, thereby supporting the imposition of consecutive sentences in connection with the assault convictions. . . ."), appeal denied, 93 N.Y.2d 1013, 1025, 697 N.Y.S.2d 572, 584 (1999).

compulsion" as "to compel by either: (a) use of physical force; or (b) a threat . . . which places a person in fear of immediate death or physical injury to himself, herself or another person. . . ."

New York courts have recognized that the commission of rape and sodomy can be two separate and distinct acts even if they "'took place over a continuous course of activity.'" See, e.g., People v. Bailey, 17 A.D.3d 1022, 1023, 794 N.Y.S.2d 223, 224 (4th Dep't) ("[T]he imposition of concurrent sentences was not required . . . [a]lthough the underlying acts of rape and sodomy 'took place over a continuous course of activity, they constituted separate and distinct acts, and none of the completed offenses was a material element of another offense.'"), appeal denied, 5 N.Y.3d 803, 803 N.Y.S.2d 32 (2005); People v. Smith, 269 A.D.2d 778, 778, 703 N.Y.S.2d 849, 849-50 (4th Dep't) ("The People assert . . . that the court's imposition of consecutive terms of imprisonment on the rape, sodomy and robbery counts is legal. We agree."), appeal denied, 95 N.Y.2d 804, 711 N.Y.S.2d 172 (2000); People v. May, 263 A.D.2d 215, 221, 702 N.Y.S.2d 393, 398 (3d Dep't) (consecutive sentences for, inter alia, first degree rape and sodomy were not erroneous where "'the facts show that the acts underlying the crimes [of rape and sodomy] are separate and distinct.'"), appeal denied, 94 N.Y.2d 950, 710 N.Y.S.2d 7 (2000); People v. White, 261 A.D.2d 653, 657-58, 690 N.Y.S.2d 300, 304 (3d Dep't) ("Although the precise time sequence of the acts in question is not clear from the victim's testimony, she stated that defendant put his penis in her vagina and in her mouth 'at different times.' Inasmuch as the rape and sodomy constitute two distinct sexual acts, consecutive sentences were properly imposed."), appeal denied, 93 N.Y.2d 1029, 697 N.Y.S.2d 588

(1999); <u>People</u> v. <u>Williams</u>, 202 A.D.2d 347, 348, 609 N.Y.S.2d 596, 597 (1st Dep't 1994), <u>aff'd</u>, 85

N.Y.2d 886, 626 N.Y.S.2d 59 (1995).

           Hardison was convicted of first degree rape for the vaginal penetration of CM and

first degree sodomy for the contact of Hardison's penis with CM's anus.  (<u>See</u> page 10 above.)  The

First Department's conclusion that these acts were "separate and distinct" is fully supported by state

law.

### B. To The Extent Hardison Is Claiming the Sentence Was Excessive, This Claim Does Not Provide a Basis For Federal Habeas Review

        To the extent that Hardison is claiming that his sentence is excessive (<u>see</u> Dkt. No.

2: Pet. Att. 12-14), the claim is quickly disposed of.  An excessive sentence claim does not provide

a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the

sentence is within the range prescribed by state law."  <u>White</u> v. <u>Keane</u>, 969 F.2d 1381, 1383 (2d Cir.

1992).[36/]

---

[36/]     Accord, <u>e.g.</u>, <u>Harris</u> v. <u>Woods</u>, 05 Civ. 5582, 2006 WL 1140888 at *39 (S.D.N.Y. May 1, 2006) (Peck, M.J.); <u>Bryant</u> v. <u>Fischer</u>, 05 Civ. 0437, 2005 WL 3418282 at *25-26 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); <u>Yapor</u> v. <u>Mazzuca</u>, 2005 WL 894918 at *27-28 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), <u>report & rec. adopted</u>, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005) (Casey, D.J.); <u>Peakes</u> v. <u>Spitzer</u>, 04 Civ. 1342, 2004 WL 1366056 at *13 (S.D.N.Y. June 16, 2004)(Peck, M.J.), <u>report & rec. adopted</u>, 2004 WL 1656568 (S.D.N.Y. July 23, 2004) (Berman, D.J.); <u>Rodriguez</u> v. <u>Senkowski</u>, 03 Civ. 3314, 2004 WL 503451 at *38 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); <u>McPherson</u> v. <u>Greiner</u>, 02 Civ. 2726, 2003 WL 22405449 at *17  (S.D.N.Y. Oct. 22, 2003) (Peck, M.J.); <u>Briggs</u> v. <u>Phillips</u>, 02 Civ. 9340, 2003 WL 21497514 at *7 (S.D.N.Y. June 30, 2003) (Peck, M.J.); <u>Hoover</u> v. <u>Senkowski</u>, No. 00 CV 2662, 2003 WL 21313726 at *10 (E.D.N.Y. May 24, 2003); <u>Wilson</u> v. <u>Senkowski</u>, 02 Civ. 0231, 2003 WL 21031975 at *13 (S.D.N.Y. May 7, 2003) (Peck, M.J.); <u>Naranjo</u> v. <u>Filion</u>, 02 Civ. 5449, 2003 WL 1900867 at *13 (S.D.N.Y. Apr. 16, 2003) (Peck, M.J.); <u>Alfini</u> v.
(continued...)

In this case, it is undisputed that Hardison's sentence was within the range prescribed by state law. Hardison was found guilty of first degree rape and first degree sodomy and was sentenced as a second felony offender to 12 and one half to 25 years imprisonment on each count, to run consecutively. Both offenses are class B felonies, and the maximum sentence for a second offender at the time of Hardison's sentencing was an indeterminate sentence of twelve and a half to 25 years imprisonment. Penal Law §§ 130.35, 130.50, 70.06(1)(a), 3(b), 4(b).

Because Hardison's sentence is within the statutory range, it is not reviewable by this Court as "excessive."

---

36/     (...continued)
Lord, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003); Reynolds v. Artuz, 97 Civ. 3175, 2003 WL 168657 at *4 (S.D.N.Y. Jan. 23, 2003); Pressley v. Bennett, 235 F. Supp. 2d 349, 368 (S.D.N.Y. 2003); Ferguson v. Walker, 00 Civ. 1356, 2002 WL 31246533 at *10 (S.D.N.Y. Oct. 7, 2002) (Swain, D.J. & Peck, M.J.); Schreter v. Artuz, 225 F. Supp. 2d 249, 258 (E.D.N.Y. 2002); Bryant v. Bennett, 00 Civ. 5692, 2001 WL 286776 at *6 (S.D.N.Y. Mar. 2, 2001) (Peck, M.J.); Solomon v. Artuz, 00 Civ. 0860, 2000 WL 863056 at *7 (S.D.N.Y. June 28, 2000) (Peck, M.J.); Foreman v. Garvin, 99 Civ. 9078, 2000 WL 631397 at *13 (S.D.N.Y. May 16, 2000) (Peck, M.J.); Thomas v. Greiner, 111 F. Supp. 2d 271, 278 n.8 (S.D.N.Y. 2000) (Preska, D.J. & Peck, M.J.); Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948) (severity of sentence generally not reviewable on habeas); DeFeo v. Artuz, 958 F. Supp. 104, 109 (E.D.N.Y. 1997); Briecke v. New York, 936 F. Supp. 78, 85 (E.D.N.Y. 1996); Haynes v. Lacey, Civ. A. No. 93-CV-2294, 1995 WL 500474 at *4 (E.D.N.Y. Aug. 8, 1995); Underwood v. Kelly, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837, 110 S. Ct. 117 (1989); Diaz v. LeFevre, 688 F. Supp. 945, 949 (S.D.N.Y. 1988); Castro v. Sullivan, 662 F. Supp. 745, 753 (S.D.N.Y. 1987) (citing earlier cases); Rivera v. Quick, 571 F. Supp. 1247, 1249 (S.D.N.Y. 1983).

## CONCLUSION

For the reasons discussed above, Hardison's habeas petition should be <u>DENIED</u> in its entirety and a certificate of appealability should not issue.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 40 Centre Street, Room 1205, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Swain (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette,</u> 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Secretary of Health & Human Servs.,</u> 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.,</u> 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

Dated:     New York, New York
           May 16, 2006

                              Respectfully submitted,


                              **Andrew J. Peck**
                              United States Magistrate Judge


Copies to:   Kyle Hardison
             Chelsea Chaffee, Esq.
             Judge Laura Taylor Swain

H:\OPIN\HARDISON